ALBANY,
Jan. 1815.

OGDEN
v.
FIREM. INS. CO.

## OGDEN against THE NEW-YORK FIREMEN INSURANCE COMPANY.

Insurance on a vessel "at and from *Malta* to *St. Petersburgh,* with liberty to touch at *Cagliari, Algiers, Tangiers,* and *Wingo Sound,*" (*Gottenburgh,*) &c. for a premium at and after the rate of 40 per cent., to return 15 per cent if the vessel passed the *Gut of Gibraltar* on or before the 20th of *June,* and, the risk ends without loss, or 15 per cent. if the risk ends in safety at *Gottenburgh.*" The vessel sailed on the voyage insured, and passed the *Gut of Gibraltar* on the 9th of *July,* 1812, and on the 17th of *July,* on account of adverse winds, was obliged to come to anchor in the *Downs,* for safety; and there hearing of the advance of the *French* arms and state of the ports in the north, the master concluded to abandon the prosecution of the voyage and go to *London,* where the vessel and cargo were seized, on hearing of the war between the *United States* and *Great Britain.*

THIS was an action of *assumpsit,* brought to recover back part of the premium paid by the plaintiff to the defendants, on two policies of insurance, on vessel and freight, dated the 12th of *August,* 1812. The voyage described in the policies was, "at and from *Malta* to *St. Petersburgh,* with liberty to touch at *Cagliari, Algiers, Tangiers,* and *Wingo Sound,* and to seek, wait for, join and leave convoy at any time during the voyage." The premium was declared to be "at and after the rate of *forty per cent.* to return *fifteen per cent.* if the vessel passes the *Gut of Gibraltar* on or before the 20th of *June* last, and the risk ends without loss, or fifteen per cent. if the risk ends in safety at *Gottenburgh.*

*Wingo Sound* is the outer road or harbour of *Gottenburgh.*

The vessel sailed on the voyage insured, the 4th of *July,* 1812, and passed the *Gut of Gibraltar,* on the 9th of *July*; on the 17th of *July,* being in the *English* channel, she met with violent adverse winds, in consequence of which she came to anchor in the *Downs* for safety. The supercargo wrote to the correspondent of the assured at *London,* for information as to the political situation of the northern ports, and as to the advance of the *French* armies towards *St. Petersburgh.* The following day, and during the continuance of the same gale, the supercargo received an answer to his letter, informing him of the advance of the *French* armies, and their probable success, and advising him to come to *London.* The supercargo concluded to do so, and accordingly proceeded to *London,* but before the arrival of the vessel at that place, accounts were received of the declaration of war by the *United States* against *Great Britain,* and the vessel and cargo were seized by the port admiral, and were afterwards condemned as *droits* of admiralty.

It was held that the risk was divisible; and that the underwriters being discharged, by the act of the insured, from all risk from *Gottenburgh* to *St. Petersburgh,* were bound to return the 15 per cent., the stipulated premium for such risk.

At the *New-York* sittings, in *May* last, a verdict was taken for the plaintiff for 3,194 dollars, being the amount of premium to be returned, subject to the opinion of the court on a case, as above stated, with liberty to either party to turn the same into a special verdict.

*D. B. Ogden,* for the plaintiff. The defendants having, by the voluntary act of the master, been released from the risk of the voyage beyond *Gottenburgh,* and the risk having ended safely, the plaintiff is entitled to the stipulated return of premium for that portion of the voyage.*

It will be said, perhaps, that the policy is to be construed strictly according to its terms, and that, as the vessel never went to *Gottenburgh,* the risk did not end in safety there. But the rule is, that the policy is to be construed according to the evident intention of the parties, and not according to the words.† The discharge of the underwriter from all the risk, is equivalent to arriving in safety.

By the act of the insured, in this case, the enterprise was voluntarily abandoned; the risk from *Gottenburgh* to *St. Petersburgh* was never run, and the insurers were wholly discharged from it. They ought, therefore, to return the fifteen per cent., the estimated premium for that risk. In *Dagleish* v. *Brooke,*‡ *Le Blanc,* J. says, " the term, *safe arrival,* is with reference to the responsibility of the underwriters;" and as the ship and goods, in that case, had both arrived at a spot which released the underwriters from all responsibility, it was for the benefit of the underwriters to construe it as an arrival at the port of discharge, so as to release them from any further risk, and that entitled the insured to a return of premium.

A person ought not to be paid for a risk he has never incurred, and therefore, where there are two distinct points of time, or distinct voyages, either in the contemplation of the parties, or by the usage of trade, only one of which is performed, the premium ought to be returned in the other, though both are contained in one policy.*

*Wells* and *S. Jones,* jun. contra. We do not pretend that the insured are not entitled to a return of premium where no risk has been run. But we must look at the terms of the contract between the parties in this case. The fifteen per cent. is to be

* *Marsh. on Ins.* 669, 670. 676.

† *Audley* v. *Duff,* 2 *Bos. & Pull.* 111. *Marsh.* 676.

‡ 15 *East,* 295.

§ *Park on Ins.* 516. and cases cited.

returned, "if the risk ends in safety at *Gottenburgh*." The words "in safety," are important, and must have some meaning and effect; but on the reasoning of the plaintiff's counsel they must be struck out of the policy.

This is not an insurance at and from *Malta* to *Gottenburgh*, for *twenty-five* per cent., and if the vessel proceeds thence to *St. Petersburgh*, then fifteen per cent. more to be paid; but it is on a voyage from *Malta* to *St. Petersburgh*, for a premium of *forty* per cent. The return of the *fifteen* per cent. depended on the double contingency of the vessel arriving at *Gottenburgh*, and arriving there *in safety*. It was not to be returned if the vessel arrived at that place after being shattered by a storm, so as to subject the underwriters to a loss. Where the risk is entire, and has once commenced, though the time of its continuance be ever so short, there can be no return of premium. This subject was fully discussed in the case of *Hendricks* v. *Commercial Insurance Company*,\* which was decided on that principle. The risk commenced on the vessel's leaving *Malta*, and if she had been lost the next day after her departure, the insured could not have claimed a return of any part of the premium. But it is argued that the *deviation* in this case was equivalent to a safe arrival at *Gottenburgh*. On this principle, every deviation which discharges the underwriters from their responsibility, would entitle the insured to a return of premium.

In the case of *Audley* v. *Duff*, the vessel sailed with convoy, and the fleet being dispersed, she run for *Portsmouth*, and arrived, and the only question was, whether this was sailing with convoy.

In *Myer* v. *Gregson*,† the vessel was warranted to sail on or before the 1st of *August*, to return eight guineas of the premium, if she sailed with convoy. The vessel did not sail until *September*, and the underwriters were wholly discharged from the policy, and whether she sailed with convoy or not could make no difference. The premium was voluntarily paid into court. The question as to the return of premium was not before the court. The only point decided was, that where the risk is entire, and has once commenced, there can be no return of premium. *Marshall*, though he refers to this case, states the proposition broader than the case will warrant; but *Park*, in referring to the same case, lays down no such position, but merely states the general rule, which no person will dispute.

ALBANY,
Jan. 1815.

OGDEN
v.
FIREM. INS. Co.

*T. A. Emmet,* in reply. There is no adjudged case precisely like the one before the court, and the only point is as to the application of general principles. It is a sound principle, that contracts are to be construed and understood according to the clear intent of the parties.

In this case, as it regards the underwriters, the risk ended in safety before reaching *Gottenburgh.* What reason can there be why the premium should not be returned in this case, as well as in the case of her safe arrival at that place? The defendants can show no possible injury from the breaking up of the voyage without going to *Gottenburgh;* on the contrary, they are saved from the risk of loss, which would have existed had she proceeded until her arrival at that port.

The meaning of the clause, as to the return of the *fifteen* per cent., is, that if no loss happens before the vessel reaches *Gottenburgh,* and she does not go beyond that port, then so much of the premium is to be returned. The argument that this is an entire risk from *Malta* to *St. Petersburgh,* and therefore, it having commenced, the entire premium is to be retained, would apply to every case of an apportionment and return of premium. For certain purposes, for the benefit of the underwriters, the contract is considered entire; but for other purposes, it is, also, considered as divisible. This is like a voyage at and from *New-York* to *Lisbon,* and at and from *Lisbon* back to *New-York,* and if the voyage ends in safety at *Lisbon,* so much of the premium is to be returned.

The principle is correctly laid down by *Park,*[*] which is supported by the case of *Stevenson* v. *Snow.*[†] In case of a deviation, though a return of premium cannot be demanded for the risk which has begun to run, yet it may be demanded for such part of the risk as has not commenced. *Marshall*[‡] says, " if it be stipulated that there shall be a return of part of the premium for sailing with convoy and arrival, and in consequence of a breach of warranty, or the non-performance of some stipulation, or of a deviation, the underwriters be discharged before the ship can sail with convoy, the insured shall be entitled to the stipulated return of premium, because the discharge of the underwriters is, to them, equivalent to a sailing with convoy and arrival." If we generalize this position, (and, to be a principle of law, it must be generalized,) it is

[*] *Park, Ins.* (6th ed.) 516.
[†] *Burr.* 1237. S. C. *Bl. Rep.* 318.
[‡] *Marsh. Ins.* 676.

ALBANY,
JAN. 1815.

OGDEN
v.
FIREM. INS. CO.

* Cowper, 519.
Park, 519, 520.

this: that wherever the commencement of a risk, for which a premium has been received, has been prevented, by any cause whatever, the insured is entitled to a return of premium.

It is said that *Marshall* is not supported in his position, by the case he cites; but he is clearly supported by the case of *Stevenson* v. *Snow*, and *Marshall* himself is no weak authority.

Again, in *Tyrie* v. *Fletcher*,* Lord *Mansfield* says, " that the underwriter receives the premium for running the risk of indemnifying the insured, and to whatever cause it be owing, if he does not run the risk, the consideration for which the premium was paid, fails, and he, therefore, ought to return it." The present is an admitted case of deviation, which wholly discharged the underwriters from the risk; and though no case precisely similar, as to the facts, is to be found, yet the general principle which is to govern the decision is clear, and perfectly applicable.

THOMPSON, Ch. J. delivered the opinion of the court. This is an action to recover back part of the premium paid on two policies of insurance on a voyage from *Malta* to *St. Petersburgh.* The policy contains several special stipulations, as to touching and staying at intermediate ports. The clause relating to the premium is as follows: " At and after the rate of forty per cent., to return fifteen per cent. if the vessel passes the *Gut of Gibraltar* on or before the twentieth of *June* last, and the risk ends without loss ; or *fifteen per cent. if the risk ends in safety at Gottenburgh.*" And it is for the return of the fifteen per cent. last mentioned, that this action is brought.

While on the voyage, and in the *English* channel, the supercargo received such information, as to induce him to abandon the voyage to *Petersburgh*, and go to *London.* The argument urged on the part of the defendants against the return of premium, is, that the arrival in safety at *Gottenburgh*, was the condition upon which the premium was to be returned; and the vessel not having arrived there at all, the condition has not been performed. This does not appear to me to be a fair interpretation of this provision in the policy. It would be too rigid a construction, and obviously against the intention of the parties. The premium is paid for the risk assumed and run by the underwriters. And, although the policy covers the whole voyage, from *Malta* to *St. Petersburgh*, if the assured should

choose to end it at the latter place, yet the stipulation as to the return of premium manifestly shows, that in the contemplation of the parties, circumstances might occur, which would render it advisable to end the voyage at *Gottenburgh*. The voyage must, therefore, be considered divisible, and the premium follows such divisibility. The risk from *Gottenburgh* to *St. Petersburgh*, was calculated at fifteen per cent., for that sum was to be returned, in case the risk on that part of the voyage was not run. The risk is the consideration for the premium, and it was matter of perfect indifference to the underwriters, whether the vessel arrived at *Gottenburgh* or not. The assured had the election of terminating the voyage there; and if it was broken off before, the vessel was never on the voyage from *Gottenburgh* to *St. Petersburgh*, and the policy never attached, so far as it relates to that part of the voyage. The arrival in safety at *Gottenburgh*, cannot be presumed to be the contingency upon which the fifteen per cent. was to be returned. It was the exoneration of the underwriters from all risk beyond *Gottenburgh*, which entitled the assured to a return of premium, according to the fair and reasonable interpretation of the policy. The plaintiff is, accordingly, entitled to judgment.

SPENCER, J. not having heard the argument, gave no opinion.

Judgment for the plaintiff.